**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**G.D USA, INC.,**

        **Plaintiff,**

**v.**                                                    **Civil Action No. 3:19cv694**

**UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,** *et al.***,**

        **Defendants.**

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on two motions:

(1)    Defendants United States Citizenship and Immigration Services ("USCIS") and Kenneth T. Cuccinelli's (collectively, the "Defendants") Motion for Summary Judgment (the "USCIS Motion"), (ECF No. 18); and,

(2)    Plaintiff G.D USA, Inc.'s ("G.D USA") Motion for Summary Judgment (the "G.D USA Motion"), (ECF No. 23).

Both Parties timely responded to the Cross-Motions for Summary Judgment, (ECF Nos. 25, 26),

and both Parties replied, (ECF Nos. 27, 28).

On May 1, 2019, G.D USA filed with USCIS an L-1B Petition (the "L-1B Petition") on

Form I-129 on behalf of a senior technician, Ahmet U.,[1] seeking an L-1B visa for Ahmet U. to

join G.D USA's domestic workforce. (Notice Oct. 23, 2019 Admin. R. ("Record")[2] at 3, 20–44,

---

[1] For privacy reasons, the Court will refer to the individual worker, on behalf of which G.D USA filed, by his first name and last initial. *See* Memorandum from the Comm. on Ct. Admin. and Case Mgmt. (May 1, 2018).

[2] The Court refers to the designated record, provided as a joint appendix, as "R."

ECF Nos. 20–22.)[3]  G.D USA sought to employ Ahmet U., who currently works with G.D USA's Turkish affiliate, as a Senior Assembly Technician responsible for, among other things, servicing G.D USA's cigarette packing machines.  (R. 192, 197.)  Due to the nature of the L-1B visa process, G.D USA bore the burden of proving the L-1B visa requirements, including that Ahmet U. had the requisite "specialized knowledge" under 8 U.S.C. § 1101(a)(15).  (R. 32, 34, 45; *see also* Compl. Ex. 3 "USCIS Policy Memorandum, PM-602-0111, L-1B Adjudications Policy" 5, ECF No. 1-3.)[4]

USCIS denied the petition and G.D USA filed this suit.  The Parties' dispute whether USCIS improperly assessed the evidence supporting the L-1B Petition.  In considering L-1B visa petitions, USCIS weighs the evidence under the preponderance of the evidence standard.  The Court, then, will consider whether substantial evidence exists to support USCIS's finding that G.D USA did not prove Ahmet U.'s purported "specialized knowledge" by a preponderance of the evidence.

These matters are ripe for adjudication.  The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would

---

[3] Because USCIS filed the administrative record in seven parts under three ECF numbers, for readability the Court will proceed under the administrative record's pre-existing page numbers, and not the CM/ECF page numbers assigned to each part.

[4] In 2015, USCIS issued a memorandum (the "2015 Policy Memo") that "provides guidance on the adjudication of the L-1B classification" for intracompany transferees who "possess 'specialized knowledge.'" (Compl. Ex. 3 "USCIS Policy Memorandum, PM-602-0111, L-1B Adjudications Policy" 1, ECF No. 1-3.)  The 2015 Policy Memo "sets forth USCIS policy regarding the L-1B classification for workers with specialized knowledge."  (*Id.* 2.)  The 2015 Policy Memo applies to L-1B "petitions pending or filed with USCIS on or after August 31, 2015."  (*Id.*)  The 2015 Policy Memo also "supersede[d] and rescind[ed]" earlier USCIS memoranda concerning L-1B specialized knowledge petitions.  (*Id.* 2.)

not aid the decisional process.  The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[5]

For the reasons stated below, the Court will grant the USCIS Motion for Summary Judgment and

deny the G.D USA Motion for Summary Judgment.

## I.  Factual and Procedural Background

G.D USA's allegations arise out of USCIS's denial of its L-1B petition (the "L-1B

Petition") filed on behalf of a senior technician, Ahmet U., who currently works with G.D USA's

Turkish affiliate.  (R. 3; 20–44.)  At issue is USCIS's decision denying G.D USA's L-1B petition

based on a finding that the record lacked evidence to support that Ahmet U. had the requisite

"specialized knowledge."

G.D USA claims that USCIS's decision denying the L-1B Petition was arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with the law because USCIS

"failed to follow . . . its own policy memorandum on L-1B adjudication, invented novel

standards for specialized knowledge such as an overly-broad requirement that a person need to

be an 'expert in his company or industry,' and ignored the copious evidence of economic need

for [Ahmet U.'s] specialized knowledge which by itself should have been sufficient to meet the

standard for L-1B."  (Compl. ¶ 9, ECF No. 1.)  USCIS counters that, in employing the 2015

Policy Memo's definition of "specialized knowledge," it concluded that "the evidence G.D USA

presented was insufficient to prove that [Ahmet U.] had been employed in a position abroad that

involved 'specialized knowledge.'"  (Mem. Supp. USCIS Mot. Summ. J. 20, ECF No. 19.)

USCIS maintains that it correctly weighed the evidence under the preponderance of the evidence

---

[5] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  G.D USA, in its one-count Complaint, alleges Defendants, in denying G.D USA's L-1B Petition, violated the Administrative Procedure Act, 5 U.S.C. §§ 551–559.  (Compl., ECF No. 1.)

standard and that G.D USA "merely disagrees with the USCIS's weighing of that evidence." (*Id.* 28.)

### A.   Factual Background[6]

G.D USA operates as the "leading supplier of high-technology machinery for cigarette making and packing, filter production, and other consumer products."  (R. 46, 197.)  G.D USA is a subsidiary of the Coesia Group, "a multinational group of innovation-based industrial solutions companies based in Italy."  (R. 46, 197.)  Since its founding in 1978, G.D USA "has grown into a company with 165 employees at its 130,000 square-foot facility in metropolitan Richmond, Virginia."  (R. 35, 46.)  G.D USA sells and services a line of Italian-designed machines which automate production of cigarettes and other consumer products known as "G.D machines." (R. 46, 115–31.)  G.D USA can customize its machines to accommodate the consumer's product and desired output, making for vast differences between machines and their component parts. (R. 470–71.)  G.D USA's machines are protected by United States patents.  (R. 133–38.)

Recently, G.D USA reported a significant loss in its "only employees who have reached [senior] level of expertise" due to retirement.  (R. 47.)  For example, in 2019 alone, G.D USA

---

[6] The Parties come before the Court on cross motions for summary judgment most often governed by Federal Rule of Civil Procedure 56(c).  In recounting the factual history under Rule 56(c), the Court typically relates the undisputed facts as articulated in the parties' briefing on both motions for summary judgment.  In ruling on each motion, the Court would view the undisputed facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Where the court is faced with cross motions for summary judgment, as in the instant case, the court must review each motion separately on its own merits.  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).  On cross motions for summary judgment, "each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).

Because the Court must limit its review to the administrative record and the soundness of the agency's administrative action, no material facts in dispute prevent final resolution of this matter.  *Ohio Valley Env't Coalition v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009).

paid "almost 14,000 hours on overtime pay due to insufficient senior-level staffing" and "lost nine mechanical technicians in the past 5 years."  (R. 45, 192.)  G.D USA states that these senior-level technicians "install, tune, test and protocol machines."  (R. 192.)  Senior-level technicians also support the training of lower-level technicians and trainees.  (R. 192.)  In its L-1B Petition, G.D USA presented training as a critical aspect of its senior technician workforce because G.D USA "cannot simply hire experienced technicians from our competition because they are skilled on an entirely different line of machines and are completely lost and flummoxed when asked to perform on our line of Italian-designed and -engineered machines."  (R. 474.) Because of its "dire" lack of "a new crew of skilled technicians," G.D USA claims to be losing its "competitive edge" in the industry.  (R. 193, 496.)  G.D USA identified Ahmet U., a senior technician working at its Turkish affiliate, ("G.D Turkey"), as a potential Senior Assembly Technician to support its technician workforce.  (R. 200.)

G.D USA brings this one-count complaint following USCIS's denial of the L-1B Petition it filed on behalf of Ahmet U., alleging that USCIS's denial was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A).  (Compl. ¶ 62.)  Generally, G.D USA alleges that USCIS's denial violated the APA because USCIS "applied heightened and improper legal standards; failed to consider all record evidence; and reached factual conclusions unsupported by any evidence in the record."  (*Id.* ¶¶ 64–65.)  G.D USA requests that the Court vacate USCIS's denial of the L-1B Petition, order USCIS to approve the L-1B Petition, and order USCIS to adjudicate subsequently G.D USA's L-1B petitions.  (*Id.* 17.)

### B.     Administrative Record[7] and Procedural Background

On May 1, 2019, G.D USA filed the L-1B Petition on Ahmet U.'s behalf with USCIS on Form I-129.[8]  (R. 3; 20–44.)  The L-1B Petition sought an L-1B nonimmigrant classification visa for Ahmet U. as an intra-company transferee who would work for G.D USA "in a capacity that . . . involves specialized knowledge" under 8 U.S.C. § 1101(a)(15) as a Senior Assembly Technician.  (R. 32, 34, 45.)

The Parties' disagree about the legality of USCIS's review of G.D USA's evidence in support of the L-1B Petition.  On August 13, 2019, USCIS denied the L-1B Petition, finding that (1) the record did not "sufficiently identify or describe the actual special . . . knowledge possessed by [Ahmet U.];" and, (2) the record did not show "how [Ahmet U.'s] experience or duties with [G.D Turkey] enable[d] him to acquire knowledge that is special . . . ."  (R. 386–87.)  G.D USA argues that it submitted evidence in support of the L-1B Petition that "show[s] that [Ahmet U.] obtained specialized knowledge of G.D[] [USA's] unique, complex, and patented machines through several years of training by G.D factory experts, which [Ahmet U.] used

---

[7] In considering USCIS's denial of the L-1B Petition, the Court "must judge the propriety of [agency] action solely by the grounds invoked by the agency."  *See Crespin-Valladares v. Holder*, 632 F.3d 117, 123 (4th Cir. 2011) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (the "*Chenery*" doctrine").  In limiting its review to the administrative record, the Court must refrain from "guess[ing] at what [the] agency meant to say."  *Id.* at 123–24 (citation omitted).

[8] In its Motion for Summary Judgment, G.D USA provides background beyond the administrative record to its filing process with USCIS.  On May 27, 2018, G.D USA filed the first L-1B petition on Ahmet U.'s behalf.  (Mem. Supp. G.D USA Mot. Summ. J. 9 n.4, ECF No. 24.)  In response, USCIS issued a Request For Evidence ("RFE") seeking additional documentation including records from Turkey.  (*Id.*)  Because G.D USA did not timely respond to the request, USCIS denied G.D USA's first L-1B petition on November 15, 2018.  (*Id.*)  Thereafter, G.D USA filed the May 1, 2019, petition which "included the additional documentation which had been requested in the prior petition RFE."  (*Id.*)

continuously since April 2009 in his job as Mechanical Technician with G.D Turkey, and which

he would continue to use for G.D USA." (Mem. Supp. G.D USA Mot. Summ. J. 9.)

Below, the Court recounts USCIS's review of the L-1B Petition through each step of

agency review, including: (1) Initial L-1B Petition and Evidence in Support; (2) USCIS's

Request for Evidence (the "Agency RFE"); (3) G.D USA's Response to the Agency RFE; and,

(4) USCIS's denial of the L-1B Petition.

### 1.   Initial L-1B Petition and Evidence in Support

With its May 1, 2019 L-1B Petition, counsel for G.D USA submitted a letter dated April

30, 2019 that listed the following evidence:

1. G.D USA's letter from Greg Creel, G.D USA's Human Resources Business Partner;
2. Coesia's corporate brochure;
3. Proof that G.D USA is currently doing business;
4. Proof that Beneficiary's foreign employer is currently doing business;
5. Form I-797 Blank L Approval Notice listing G.D USA and [Ahmet U.'s] foreign employer . . . ;
6. Copies of G.D USA's U.S. patents for proprietary automated-packaging machines;
7. G.D USA's chart outlining the current and impending vacancies for Skilled Mechanical Assembly Technicians;
8. G.D USA's letter from Rick Pillow, Service Manager for North America and Mexico, describing the cause of the current lack of skilled technicians and where the greatest staffing needs are located;
9. G.D USA's chart outlining the budgeted hours for technicians working in the Mechanical Assembly Department . . . ;
10. [Ahmet U.'s] CV; and,
11. Certification from [Ahmet U.'s] foreign employer confirming employment.

(R. 43.)

Of the eleven exhibits attached to the initial L-1B Petition, seven documents related to

G.D USA, the Coesia Group, or its machines. (R. 43, 56–190, 194–95.) Four documents

pertained to Ahmet U.: (1) an April 29, 2019 letter signed by G.D USA's Human Resources

Business Partner Greg Creel (the "April 2019 Letter"), (R. 45–54); (2) a March 29, 2019 letter

signed by Rick Pillow, G.D USA's Tobacco Field Service Manager for North America, (the

"March 2019 Pillow Letter"), (R. 192–93); (3) Ahmet U.'s curriculum vitae (the "CV"), (R. 196–98); and, (4) a certification from G.D Turkey signed by Andrea Fauci, General Manager of G.D Turkey, (the "Fauci Certification"), (R. 200).  Because the Parties' dispute centers on the issue of Ahmet U.'s purported "specialized knowledge," the Court briefly recounts the contents of each of the four exhibits relating to Ahmet U.

<strong>a.</strong>      <strong><u>The April 2019 Letter</u></strong>

The April 2019 Letter articulated G.D USA's need for senior-level technicians due to then-current and impending vacancies of employees "who have reached th[e] level of expertise" expected by G.D USA's customers.  (R. 47.)  Due to its lack of qualified senior-level technicians, G.D USA represented that it was currently "overwhelmed and understaffed," requiring the company to expend substantial monetary resources due to 13,656 hours in annual overtime.  (R. 49–50.)

The April 2019 Letter stated that Ahmet U. has worked for G.D Turkey since 2009 as a Mechanical Technician.  (R. 45.)  Before being hired as a permanent employee with G.D Turkey, Ahmet U. worked as a contractor and "trained under . . . instructors in [Bologna, Italy]."  (R. 45, 49.)  The April 2019 Letter continues by saying that Ahmet U. "has been trained and developed expertise over the past 9 years" on G.D USA's machines.  (R. 46–47.)  During Ahmet U.'s time in Italy, his training "encompassed all aspects of the G.D line of machines which are unique to the industry, as well as the technical design, installation, troubleshooting, training, and rebuild/refurbishment of these unique machines."  (R. 52.)  Ahmet U.'s level of expertise, the April 2019 Letter argued, "can only be acquired through extensive internal training and experience" with G.D USA's machines "out in the field and within the tobacco industry." (R. 50.)  Such expertise, according to G.D USA, could not be "easily transferred or taught in a

short period of time" and, as such, it would "take approximately four years to train" a new technician to the level of Ahmet U.'s specialized knowledge.  (R. 50.)

The April 2019 Letter stated that Ahmet U. would "use his specialized knowledge of G.D [USA]'s sophisticated and proprietary tobacco-processing machinery to fill a critical knowledge gap within [G.D USA's] staff and provide desperately-needed post-sale expertise to [G.D USA's] U.S. customers."  (R. 45.)  Specifically, "[Ahmet U.] will use his specialized knowledge of G.D [USA]'s sophisticated and proprietary tobacco-processing machinery to conduct and supervise machine re-builds, refurbishments, and size changes according to organization standard and those within the tobacco industry."  (R. 50.)  The breakdown of Ahmet U.'s responsibilities as a Senior Assembly Technician for G.D USA would include:

- "Leading in-house re-builds and refurbishments" (20%);
- "Training junior G.D [USA] technicians and engineers" (20%);
- "Overseeing and performing commissioning, testing, and on-site installation of G.D [USA] machines" (20%);
- "Traveling to customer sites to troubleshoot and oversee complex G.D [USA] machine repairs" (30%);
- "Preparing, reviewing, and analyzing performance reports from customers . . . , [and] recommending corrective technical actions to management" (10%).

(R. 50–51.)  By comparison, Ahmet U.'s duties for G.D Turkey consisted of:

- "Performing in-house re-builds and refurbishments" (40%);
- "Performing commissioning, testing, and on-site installation of G.D machines" (25%)
- "Training junior G.D technicians and engineers" (10%);
- "Traveling to customer sites . . . to troubleshoot and oversee complex G.D machine repairs" (15%);
- "Preparing, reviewing, and analyzing performance reports from customers . . . , [and] recommending corrective technical actions to management" (10%).

(R. 52–53.)

G.D USA stated that Ahmet U. "has a decade of experience using the same specialized knowledge [G.D USA] would like him to use in the U.S."  (R. 52.)  It added that G.D USA had been "unable to find anyone in the U.S. with as close to [Ahmet U.'s] specialized knowledge" of

G.D USA's machines and that his transfer "is key to [G.D USA's] ability to hire and train more U.S. workers." (R. 45.) Thus, "the future of [G.D USA's] U.S. workforce depends on transferring [Ahmet U.]." (R. 49.)

### b.     The March 2019 Pillow Letter

The March 2019 Pillow Letter, signed by G.D USA's Field Service Manager for North America, Rick Pillow, described Ahmet U.'s skill level as "Tech 3 level," or that of a Senior Assembly Technician. (R. 192.) The March 2019 Pillow Letter stated that Ahmet U. gained his technical expertise with G.D Turkey learning "how to install entire lines of equipment and progress them all the way through protocol." (R. 192; *see also* R. 469 n.1 (designating "Tech Level 3" as the skill level of a Senior Assembly Technician).)

### c.     The CV

Ahmet U.'s CV indicates that he began his work with G.D machines at Tekser, "a company that leads all [of] the activities of Italian company G.D in Turkey." (R. 197.) From 2009 to then-present, Ahmet U. worked with G.D Turkey as a "technician," where his duties included "installation of the machinery lines." (R. 197.)

### d.     The Fauci Certification

The Fauci Certification dated April 25, 2019, signed by Andrea Fauci, General Manager of G.D Turkey, reports that Ahmet U. has worked continuously for G.D Turkey since 2009. (R. 200.) Prior to joining G.D Turkey, Ahmet U. "spent four years as a contractor training on [G.D] machines at [the] knowledge center in Bologna, Italy." (R. 200.) Fauci certified that Ahmet U. "passed all internal training courses administered by knowledge-center representatives from Italy, which was required for him to be hired as a direct G.D Turkey employee." (R. 200.)

10

2.    **USCIS's Request for Evidence**

On May 9, 2019, in response to G.D USA's L-1B Petition, USCIS issued G.D USA a

Request for Evidence (the "Agency RFE").  (R. 2–9.)  The Agency RFE indicated that G.D

USA's evidence was "insufficient" to show the following requirements for an L-1B visa:

(1) that G.D USA and its Turkish affiliate engaged in business for the relevant period; (2) that

Ahmet U. had been employed abroad continuously for one-year full time; and, (3) that Ahmet U.

had specialized knowledge.  (R. 4–6.)  The Agency RFE requested additional evidence to

support G.D USA's L-1B Petition.  (R. 4–6.)  First, as to G.D USA and G.D Turkey's business

engagements, the Agency RFE found the L-1B Petition insufficient to show that either G.D USA

or G.D Turkey "is doing business."  (R. 4.)  Second, as to Ahmet U.'s employment abroad, the

Agency RFE stated that G.D USA's documents did not show that Ahmet U. "has at least one

continuous year of full-time employment abroad with a qualifying organization."  (R. 5.)

Most pertinently here, as to Ahmet U.'s specialized knowledge, the Agency RFE stated

that USCIS found G.D USA's initial evidence supporting the L-1B Petition insufficient to

establish Ahmet U.'s specialized knowledge.  (R. 6.)  The Agency RFE recognized that the

petition's supporting documents "indicate[d] that [Ahmet U.] was a level 3 technician, with over

9 years of experience installing and repairing [G.D USA's] proprietary technology," that Ahmet

U. "spent four years in Italy training on [G.D USA's] machines," and that Ahmet U.

"successfully passed all internal training courses administered by knowledge-center

representatives from Italy."  (R. 6.)

The Agency RFE noted that G.D USA had not provided a training record for Ahmet U. or

evidence "that his training is more advanced or special than the training provided to other

technicians" at G.D USA or affiliates or other companies in the industry.  (R. 6.)  The Agency

RFE also stated that G.D USA's initial documents showed that Ahmet U. had training for and worked on G.D USA's proprietary machines but did not identify how he has "knowledge which is either distinct or more complex than the knowledge which is held by other individuals holding similar positions" at G.D USA or in the industry at large.  (R. 6.)

USCIS declined to accept G.D USA's initial description and percentage breakdown of Ahmet U.'s duties at G.D Turkey because it "d[id] not provide enough probative information" to show specialized or advanced knowledge "relative to [that] which is commonly found among teammates and similarly employed professionals within the industry."  (R. 7.)  The Agency RFE rejected G.D USA's proffered breakdown of Ahmet U.'s projected duties with G.D USA for the same reasons, stating that it "d[id] not explain how [Ahmet U.'s] special knowledge is required in order to fulfill the Senior Assembly technician role in the United States."  (R. 8.)  And, while the Agency RFE acknowledged G.D USA's stated need to train junior technicians, it submitted that such a "dire" need for senior training personnel did not align with a job description that designated minimal time to training.  (R. 8.)

The Agency RFE requested specifically that G.D USA submit evidence of the following:

- Evidence of [Ahmet U.'s] prior education, training, and employment and an explanation how [sic] that relates to the claimed specialized knowledge.
- A description of [Ahmet U.'s] knowledge or expertise and why it is specialized. Please identify [Ahmet U.'s] knowledge as either "special" and/or "advanced."
- A comparison of the beneficiary's knowledge to that of other employees and workers in the same field.

(R. 6.)

### 3.     G.D USA's Response to the Agency RFE

On August 1, 2019, G.D USA submitted a letter in response to the Agency RFE, including an additional nine exhibits.  (*See* R. 396–405.)  Five of the nine exhibits related to Ahmet U.'s alleged specialized knowledge:  (1) a second letter from G.D USA's Service Manager Pillow, dated July 31, 2019 (the "July 2019 Pillow Letter"), (R. 469–75); (2) a second letter from Country Manager Fauci, dated July 30, 2019 (the "July 2019 Fauci Letter"), (R. 493–95); (3) a list of Ahmet U.'s specific trainings since September 2005 ("Ahmet U.'s Training List"), (R. 497–502); (4) a letter from Liggett Group LLC, a G.D USA customer, dated July 26, 2019 (the "Liggett Letter"), (R. 504–06); and, (5) an anonymous sample diary of a Special Assembly Technician's weekly tasks at G.D USA (the "Sample Diary"), (R. 508–13).

#### a.     The July 2019 Pillow Letter

The July 2019 Pillow Letter described Ahmet U.'s projected role at G.D USA, including a detailed description of each stage of building, assembling, and testing the G.D machines. (R. 470–73.)  It said that G.D USA could not hire from competitors because competitors' technicians "are skilled on an entirely different line of machines."  (R. 474.)  "[T]o truly perform the demanding and senior-level duties of Senior Assembly Technician requires extensive training specific to G.D [USA] machines."  (R. 474.)  The July 2019 Pillow Letter "attached certificates and a [July 30, 2019] letter [from Andrea Fauci, R. 492–95,] confirming the four years of intensive, in-house, and experiential training [Ahmet U.] received from G.D machine experts." (R. 474.)

#### b.     The July 2019 Fauci Letter

The July 2019 Fauci Letter stated that Ahmet U.'s "hands-on training can only be accomplished at [G.D USA's affiliates'] Italian factory, which is [the] knowledge center where

G.D machines are designed and developed." (R. 494.) Fauci described the training as "accomplished through in-house courses and one-on-one supervision at G.D facilities and in the field" and that Ahmet U.'s trainings were "weeks-long, intensive courses." (R. 494.) G.D USA's affiliates "do not maintain specific records of [Ahmet U.'s] one-on-one experiential training," but Fauci maintained that Ahmet U. had "approximately four years of this in-house and experiential training." (R. 494.)

### c.       Ahmet U.'s Training List

Ahmet U.'s Training List detailed his "specific trainings since September 2005 during his employment period." (R. 497–502.) Ahmet U.'s Training List included six trainings, for basic, intermediate, and advanced trainings in Turkey and Pakistan and, from March 11 to 21, 2011, in Bologna, Italy, for 11 days. (R. 497–98.) The training descriptions include descriptions of the trainings' covered topics such as "clear understanding of the machines . . . [and] [t]o learn how to use machine catalogues and manuals . . . ." (R. 499.)

### d.       The Liggett Letter

The Liggett Letter, submitted by Liggett Group LLC ("Liggett")—one of G.D USA's customers—states that Liggett "utilizes many types of G.D equipment to provide [its] . . . products." (R. 504.) Liggett "uses [its] internal staffing to operate and maintain [its] equipment as efficiently as possible. However, as equipment ages, technology advances, and equipment changes, assistance is needed to keep [its] technicians and operators up to date and current on the machines." (R. 504.) The Liggett Letter says it relies on "G.D USA . . . for technical guidance and expertise," as well as G.D USA's technicians like Ahmet U. "to be placed on site for training purposes, machinery evaluations as well as machine repairs." (R. 504.)

14

### e.     The Sample Weekly Diary

Finally, G.D USA attached an anonymous Sample Weekly Diary detailing the typical tasks of G.D USA Senior Assembly Technicians.  (R. 508–13.)  During a typical week, the Senior Assembly Technician worked with customer technicians, such as Liggett's, to diagnose and remedy machine failures.  (R. 508.)  In other instances, junior technicians sought help for machine failures they could not mitigate on their own without the assistance of the Senior Assembly Technician.  (*See, e.g.*, R. 510–11.)

### 4.     USCIS's Decision Denying the L-1B Petition

On August 13, 2019, USCIS denied the L-1B Petition (the "August 2019 Denial"). (R. 384–88.)  USCIS found that G.D USA "ha[d] not demonstrated that [Ahmet U.] has been employed abroad in a position involving specialized knowledge."  (R. 388.)  USCIS stated that, despite G.D USA's claims that Ahmet U.'s "specialized knowledge was gained through his four year training in Italy," the record "did not demonstrate that [Ahmet U.] received the claimed four year training in Italy."  (R. 385, 387.)  USCIS found that the record only supported a finding of "one training with a length of 10 days that was located in Bologna, Italy."[9]  (R. 387.)

---

[9] Specifically, USCIS reviewed Ahmet U.'s Training List and noted that although the evidence "outline[d] the training that [Ahmet U.] received from 2005–2010, . . . it does not provide information regarding how this training was received by [Ahmet U.], or is more advanced or special in comparison with the training that other factory technicians are provided." (R. 387.)  USCIS reviewed the July 2019 Fauci Letter that stated Ahmet U. "spent four years as a contractor training on [G.D] machines at [the] knowledge center in Bologna, Italy."  (R. 387 (citing R. 200).)  USCIS found that the Fauci Certification was "contradicted in [Ahmet U.'s Training List] which shows that [Ahmet U.] received 6 trainings for a Mechanical Technician at GDT Ismir/Turkey and Pakistan Cigarette Factory, over the time period between 2005 and 2011, with only one training with a length of 10 days that was located in Bologna, Italy."  (R. 387.)

USCIS found G.D USA did not show, by a preponderance of the evidence,[10] that Ahmet U.'s knowledge or expertise "is more advanced or special than the training provided to other technicians within the same company, group of companies, or industry." (R. 385.) Instead, USCIS determined that G.D USA "relies on a broad claim that [Ahmet U.] possesses special knowledge because he acquired the expertise needed to utilize [G.D USA's] sophisticated processes, tool and equipment . . . . " (R. 386.) Specifically, USCIS found that the "duties themselves are broad and appear to be duties that are common to most repair or service technicians." (R. 386.) In sum, USCIS labeled G.D USA's claim that Ahmet U. possesses "specialized knowledge" as "overly broad and not supported by sufficient evidence to meet its burden of proof." (R. 386.)

## II.  Standard of Review:  The Administrative Procedures Act

The APA affords a right of judicial review of final agency action.[11]  *See* 5 U.S.C. § 702.[12] "Section 10 of the APA establishes that, as a general rule, 'agency action, findings, and

---

[10] G.D USA contests, as discussed below, USCIS's application of the preponderance of the evidence standard.  (Mem. Supp. G.D USA Mot. Summ. J. 21–25.)

[11] The APA limits judicial review to that of "final agency action."  5 U.S.C. § 704. Neither Party disputes that this Court may evaluate a final agency action.  To constitute "final agency action" within the meaning of Section 704, the challenged action must:  (1) be "circumscribed and discrete;" and, (2) be "final."  *Nat'l Assoc. for the Advancement of Colored People v. Bureau of the Census*, 945 F.3d 183, 189 (4th Cir. 2019).  USCIS's August 13, 2019 denial of G.D USA's L-1B nonimmigrant visa petition constitutes final agency action under Section 704 because neither the INA, nor DHS regulations at 8 C.F.R. § 103.3(a), require an administrative appeal of the denial.  Accordingly, G.D USA has no administrative remedies to exhaust, and neither Party argues that G.D USA is required to take further action.

[12] The APA states, in pertinent part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority

conclusions' will be set aside only when they are 'found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *Ohio Valley Env't Coalition*, 556 F.3d at 192 (quoting 5 U.S.C. § 706(2)).  "Review under this standard is highly deferential, with a presumption in favor of finding the agency action valid."  *Id.*

The standard of review "is narrow and a court is not to substitution its judgment for that of the agency."  *Friends of Back Bay v. U.S. Army Corps of Engineers*, No. 2:10cv270, 2011 WL 12473234, at *5 (E.D. Va. Feb. 9, 2011) (citation omitted).  The reviewing court "does not resolve factual questions, but instead determines 'whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'"  *Id.* at *4 (citing *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (quoting *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985)).

Accordingly, "the ordinary summary judgment standard under Rule 56(c) . . . does not apply."  *Hyatt v. U.S. Patent and Trademark Office*, 146 F. Supp. 3d 771, 780 (E.D. Va. 2015).  "Rather, in an APA agency review case, summary judgment 'serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA.'"  *Id.* (quoting *Sierra Club v. Mainella,* 459 F. Supp. 2d at 90).  Therefore, "the focal point for judicial review should be the administrative record already in existence."  *Sanitary Bd. of Charleston v. Wheeler*, 918 F.3d 324, 334 (4th Cir. 2019) (citation omitted).  As a result, federal courts should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *Id.* at 333 (citing *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007).

---

shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

In making its determination, a reviewing court must ensure that the agency has "examined the relevant data and provided an explanation of its decision that includes a rational connection between the facts found and the choice made." *Ohio Valley Env't Coal.*, 556 F.3d at 192 (internal quotation marks and citation omitted). The Court reviews an agency's factual conclusions under the substantial evidence standard which allows the Court to overturn only final agency decisions that are "unsupported by substantial evidence in a case . . . reviewed on the record." 5 U.S.C. § 706(2)(E). The Supreme Court of the United States has "defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" which is "something less than the weight of the evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 619–20 (1966) (citation omitted). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* at 620.

In applying the substantial evidence standard, the reviewing court's task "is not to reweigh the evidence and determine which of the competing views is more compelling." *Gonahasa v. I.N.S.*, 181 F.3d 538, 542 (4th Cir. 1999). The Court may not "substitute its views for that of the [a]gency." *Perez v. Cissna*, 914 F.3d 846, 856 (4th Cir. 2019), *reversed on banc on other grounds*, *Perez v. Cuccinelli*, 949 F.3d 865 (2020). Instead, the Court must simply "ensure that substantial evidence supports the [agency's] judgment." *Gonahasa*, 181 F.3d at 542. Nevertheless, if the grounds on which the agency relied "are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *Chenery Corp.*, 332 U.S. at 196.

Courts generally afford substantial deference to an agency's interpretation of both a statute it administers and its own implementing regulations. *See, e.g.*, *Ohio Valley Env't Coal.*,

556 F.3d at 192.  However, the Court owes no such deference to an agency's interpretation of its own regulation when "instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language."  *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006); *see also Fogo de Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1130 (D.C. Cir. 2014), *remanded to* 211 F. Supp. 3d 31 (D.D.C. 2016) (when an agency's regulation "parrots, rather than interprets, the key statutory language," the Court obliges the agency language no deference).  Where "the underlying regulation does little more than restate the terms of the statute itself," the agency has not supplemented Congress's text and thereby provided no agency interpretation to which a court might defer.  *Id.*

### III.  Analysis

G.D USA challenges the USCIS's decision to deny G.D USA's L-1B petition on behalf of Ahmet U. as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  Specifically, G.D USA argues that the evidence in support of its L-1B Petition showed by a preponderance of the evidence that Ahmet U. had the requisite "specialized knowledge" for an L-1B visa.  In contrast, USCIS argues that it correctly weighed the evidence supporting the L-1B Petition and G.D USA merely disagrees with the weight USCIS assigned its evidence.  Because the Court finds that "substantial evidence" supports USCIS's decision such that a reasonable mind could agree with USCIS's denial of the L-1B Petition, the Court will grant the USCIS Motion for Summary Judgment and deny the G.D USA Motion for Summary Judgment.

First, the Court finds that USCIS's definition of "specialized knowledge" under the 2015 Policy Memo does not require *Chevron* deference.  *See Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–45 (1984) (establishing "*Chevron* deference").  Nonetheless,

the Court will afford USCIS some deference "to the extent it has the 'power to persuade.'" *Gonzales*, 546 U.S. at 256 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Second, the Court finds that "substantial evidence" supports USCIS's two bases for its August 2019 Denial, that (1) the record did not "sufficiently identify or describe the actual special . . . knowledge possessed by [Ahmet U.];" and, (2) the record did not show "how [Ahmet U.'s] experience or duties with [G.D Turkey] enable him to acquire knowledge that is special." (R. 386–87.)  In making its finding, the Court considers the Sample Diary and Liggett Letter, finding that neither directly pertain to Ahmet U.'s asserted specialized knowledge.

Third, despite G.D USA's arguments to the contrary, the Court concludes that USCIS did not apply a heightened standard of proof such that the Court must undo the agency action. USCIS reasonably concluded that G.D USA did not sufficiently show how Ahmet U.'s knowledge differed from that of technicians generally found in his industry.  The Court cannot disturb that judgment.

### A.    Although the Court Will Afford the August 2019 Denial Some Deference, It Will Not Afford *Chevron* Deference

Because USCIS's definition of "specialized knowledge" mirrors the statutory text, the Court, while affording USCIS some deference, will not afford its August 2019 Denial *Chevron* deference.  As the Supreme Court has previously explained,

> An [agency's] interpretation of an ambiguous statute may . . . receive substantial deference.  *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–45 (1984) ("*Chevron* deference").  Deference in accordance with *Chevron*, however, is warranted only "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001).  Otherwise, the interpretation is "entitled to respect" only to the extent it has the "power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

*Gonzales*, 546 U.S. at 255–56.

USCIS's regulation that defines "specialized knowledge" does not interpret the statutory language.  The Immigration and Nationality Act (the "INA") defines "specialized knowledge" as "a special knowledge of the company product and its application in international markets or . . . an advanced level of knowledge of processes and procedures of the company." 8 U.S.C. § 1184(c)(2)(B).  The USCIS regulation, in turn, recites that "specialized knowledge" means "special knowledge possessed by an individual of the petitioning organization's *product, service, research, equipment, techniques, management, or other interests* and its *application in international markets*, or an advanced level of knowledge or expertise in the organization's processes and procedures."  8 C.F.R. § 214.2(l)(1)(ii)(D) (emphases added).  The regulation thus "largely parrots, rather than interprets, the key statutory language."  *Fogo de Chao*, 769 F.3d at 1130 (affording USCIS no deference to its interpretation of "special knowledge" because the regulation "largely parrots, rather than interprets, the key statutory language").

Although the regulation includes an expansion of types of specialized knowledge, these amendments provide no basis for judicial deference because the regulation "gives little or no instruction" on the question at issue—what *constitutes* "special" or "advanced" knowledge for the purposes of L-1B visa eligibility.  *Gonzales*, 546 U.S. at 257.  Courts have declined to find that "[USCIS] has interpreted its regulation, rather than the underlying statute" when considering "specialized knowledge."  *Fogo de Chao*, 769 F.3d at 1136.

USCIS's interpretation of the statute in an informal adjudication also does not trigger *Chevron* deference.  *See id.*  To trigger *Chevron* deference, the agency must show either that (1) "that the agency interpretation claiming deference was promulgated in the exercise of" its rulemaking authority, *Mead Corp.*, 533 U.S. at 226–27, or (2) that its interpretation presents

21

qualities justifying deference in the absence of formal rulemaking, *Barnhart v. Walton*, 535 U.S. 212, 222 (2002).  Neither circumstance presents itself here.

USCIS clearly did not promulgate its interpretation concerning specialized knowledge in the exercise of its rulemaking authority.  The August 2019 Denial, and any legal interpretations contained within it, resulted from informal adjudication within the agency, rather than a formal adjudication or notice-and-comment rulemaking.  *Fogo de Chao*, 769 F.3d at 1136 (defining USCIS's process for L-1B visa review as "informal adjudication").  As one district court found, "[t]he absence of those 'relatively formal administrative procedure[s]' that 'tend[] to foster the fairness and deliberation that should underlie a pronouncement' of legal interpretation, *Mead*, 533 U.S. at 230, weighs against the application of *Chevron* deference, *see id.* at 230–231."  *Fogo de Chao*, 769 F.3d at 1136–37.  Similarly, the August 2019 Denial also does not present qualities that might justify *Chevron* deference in the absence of a formal adjudication or notice-and-comment rulemaking.[13]

---

[13] *Chevron* deference is not limited to instances of notice-and-comment rulemaking. *Barnhart*, 535 U.S. at 222.  Instead, whether a reviewing court should give *Chevron* deference depends on

> the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time.

*Id.*
USCIS processes hundreds of thousands of nonimmigrant worker visas per year. *See* U.S. Citizenship and Immigration Services, *USCIS Final FY 2019 Statistics Available* (Jan. 16, 2020), https://www.uscis.gov/news/alerts/uscis-final-fy-2019-statistics-available (reporting for 2019, receipt of 2.2 million employment authorization applications with 500,000 petitions for nonimmigrant workers approved).
The copious nature of these petitions suggests the finding that such petitions, while laborious, do not amount to the type of "interstitial" and "complex[]" legal questions that require *Chevron* deference.  *Barnhart*, 535 U.S. at 222.  Also, as previously detailed, USCIS's interpretation of the statute "largely parrots, rather than interprets, the key statutory language,"

In the absence of *Chevron* deference, USCIS's interpretation of the statute is nonetheless "'entitled to respect' . . . to the extent it has the 'power to persuade.'" *Gonzales*, 546 U.S. at 256, (quoting *Skidmore*, 323 U.S. at 140). "The weight of such a judgment in a particular case will depend upon the thoroughness evident in [USCIS's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* at 268 (citation omitted). Therefore, the Court applies this standard when considering the matter at bar.

    **B.**    **Because Substantial Evidence Exists to Support the August 2019 Denial and USCIS Did Not Contradict its 2015 Policy Memo, the Court Will Grant the USCIS Motion and Deny the G.D USA Motion**

Because a reasonable mind could agree that G.D USA did not submit evidence to allow USCIS to compare Ahmet U.'s own knowledge and experience "to that generally found in the particular industry," (2015 Policy Memo 6), the Court finds that substantial evidence exists to support the August 2019 Denial. The Court also finds that USCIS did not contradict the 2015 Policy Memo because the August 2019 Denial adequately considered the 2015 Policy Memo factors.

    **1.**    **Legal Standard:  L-1B Visas Under the Immigration and Nationality Act**

The INA "create[d] a nonimmigrant visa program for qualifying employees of multinational companies that are being transferred to the United States" to work in either an executive or managerial capacity (L-1A) or a "specialized knowledge capacity" (L-1B). *See Fogo de Chao*, 769 F.3d at 1130 ("A visa granted to an employee whose work entails specialized

---

supporting a finding that the Court should not afford USCIS's denial *Chevron* deference. *Fogo de Chao*, 769 F.3d at 1130.

knowledge is commonly referred to as an L-1B visa.") (citation omitted).  Under the INA, a

worker will qualify for an L-1B visa if:

> within 3 years preceding the time of his application for admission into the United
> States, [he or she] has been employed continuously for one year by a firm or
> corporation or other legal entity or an affiliate or subsidiary thereof and who seeks
> to enter the United States temporarily in order to continue to render his services to
> the same employer or a subsidiary or affiliate thereof in a capacity that is
> managerial, executive, or involves specialized knowledge . . . .

8 U.S.C. § 1101(a)(15)(L).  The INA provides that

> [f]or purposes of section 1101(a)(15)(L) of this title, an alien is considered to be
> serving in a capacity involving specialized knowledge with respect to a company if
> the alien has a special knowledge of the company product and its application in
> international markets or has an advanced level of knowledge of processes and
> procedures of the company.

8 U.S.C. § 1184(c)(2)(B).

On July 11, 1991, USCIS promulgated a regulation defining "specialized knowledge" as

"special knowledge possessed by an individual of the petitioning organization's product, service,

research, equipment, techniques, management, or other interests and its application in

international markets, or an advanced level of knowledge or expertise in the organization's

processes and procedures."  8 C.F.R. § 214.2(l)(1)(ii)(D).  Accordingly, an employer seeking an

L-1B visa based on an employee's "specialized knowledge" must submit, in addition to other

requirements,

> (i) [e]vidence that the petitioner and the organization which employed or will
> employ the alien are qualifying organizations[;]
>
> (ii) [e]vidence that the alien will be employed in an executive, managerial, or
> specialized knowledge capacity, including a detailed description of the services to
> be performed[;]
>
> (iii) [e]vidence that the alien has at least one continuous year of full-time
> employment abroad with a qualifying organization within the three years preceding
> the filing of the petition[; and,]

> (iv) [e]vidence that the alien's prior year of employment abroad was in a position that was managerial, executive, or involved specialized knowledge and that the alien's prior education, training, and employment qualifies him/her to perform the intended services in the United States; however, the work in the United States need not be the same work which the alien performed abroad.

*Id.* § 214.2(l)(3).

The 2015 Policy Memo notes that both 8 U.S.C. § 1184(c)(2)(B) and 8 C.F.R.

§ 214.2(l)(1)(ii)(D) use the terms "special" and "advanced" in defining "specialized knowledge." (2015 Policy Memo 6.)  The 2015 Policy Memo states that "[b]ecause the statute and regulations do not define the terms 'special' or 'advanced,'" USCIS "look[s] to their common dictionary definitions, as well as the agency's practice and experience in this context."  (*Id.*)  Applying the dictionary definitions to the regulatory and statutory texts, the 2015 Policy Memo concludes that special knowledge constitutes knowledge that is "distinct or uncommon in comparison to that generally found in the particular industry."  (*Id.* 6 (emphasis omitted).)  Advanced knowledge amounts to knowledge that is "greatly developed or further along in progress, complexity and understanding than that generally found within the employer."  (*Id.*)

For both special and advanced knowledge, "the petitioner ordinarily must demonstrate that the beneficiary's knowledge is not commonly held throughout the particular industry."  (*Id.*)  Thus, "[d]etermining whether knowledge is 'special' or 'advanced' inherently requires a comparison of the beneficiary's knowledge against that of others."  (*Id.*)  For specialized knowledge—which concerns knowledge of the petitioning entity's products or services—that evidence must show that the beneficiary employee "has knowledge that is distinct or uncommon in comparison to the knowledge of other similarly employed workers in the particular industry." (*Id.*)  For advanced knowledge—which concerns knowledge of the entity's processes and procedures that are not commonly found in the industry—that evidence must show that the

25

employee "has knowledge of or expertise in" those processes and procedures "that is greatly developed or further along in progress, complexity and understanding in comparison to other workers in the employer's operations." (*Id.* 6–7.)  The petitioner bears the burden of establishing the L-1B elements by a preponderance of the evidence.  (*Id.* 5.)

The 2015 Policy Memo sets forth a non-exhaustive list of factors that USCIS "may consider when determining whether" a beneficiary employee possesses specialized knowledge.[14] (*Id.* 8.)  USCIS considers the factors under a "totality of the circumstances."  (*Id.*)  The 2015 Policy Memo also provides "[s]uggested evidence that petitioners may provide" to illustrate those factors.[15] (*Id.* 9.)

---

[14] The listed factors consider whether the beneficiary employee:

- possesses knowledge of foreign operating conditions that is of significant value to the petitioning organization's U.S. operations[;]
- has been employed abroad in a capacity involving assignments that have significantly enhanced the employer's productivity, competitiveness, image, or financial position[;]
- [has] claimed specialized knowledge normally gained only through prior experience with the petitioning organization[;]
- possesses knowledge of a product or process that cannot be easily transferred or taught to another individual without significant economic cost or inconvenience[;]
- has knowledge of a process or a product that either is sophisticated or complex, or of a highly technical nature, although not necessarily unique to the petitioning organization[;] [and,]
- possesses knowledge that is particularly beneficial to the petitioning organization's competitiveness in the marketplace.

(2015 Policy Memo 8.)

[15] "Other evidence" may include

- [d]ocumentation of training, work experience, or education establishing the number of years the individual has been using or developing the claimed specialized knowledge[;]

The Policy Memo warns that "[m]erely stating that a beneficiary's knowledge is somehow different from others or greatly developed does not, in and of itself, establish that he or she possesses specialized knowledge." (*Id.* 13.) Instead, USCIS ultimately relies on "the weight and type of evidence [to] establish[] whether the beneficiary possesses specialized knowledge." (*Id.*)

### 2. As It Is Defined, Substantial Evidence Exists to Support USCIS's Denial of G.D USA's L-1B Petition

As defined under the law, substantial evidence exists to support the August 2019 Denial because a reasonable mind could conclude from the record that Ahmet U., in his role with G.D Turkey, had not developed unique knowledge in comparison to others holding similar positions in G.D USA or the industry. Because USCIS reviews L-1B petitions under the preponderance of the evidence standard, the Court considers whether substantial evidence exists to support USCIS's finding that G.D USA did not prove Ahmet U.'s purported "specialized knowledge" by

---

- [c]ontracts, statements of work, or other documentation that shows that the beneficiary possesses knowledge that is particularly beneficial to the petitioning organization's competitiveness in the marketplace[;]
- correspondence or reports, establishing that the beneficiary has been employed abroad in a capacity involving assignments that have significantly enhanced the petitioning organization's productivity, competitiveness, image, or financial position[;]
- [p]ersonnel or in-house training records that establish that the beneficiary's claimed specialized knowledge normally can be gained only through prior experience or training with the petitioning organization[;]
- [c]urricula and training manuals for internal training courses, financial documents, or other evidence that may demonstrate that the beneficiary possesses knowledge of a product or process that cannot be transferred or taught to another individual without significant economic cost or inconvenience[;] [and,]
- [p]ayroll documents . . . , resumes, organizational charts, or similar evidence documenting the positions held and the compensation provided to the beneficiary and parallel employees in the petitioning organization.

(*Id.* 12–13.)

a preponderance of the evidence. (2015 Policy Memo 5–6.) In reviewing the record, the Court notes that G.D USA bore the burden of proving that Ahmet U. had the requisite "specialized knowledge" for an L-1B visa. (*Id.* 3.)

In denying the L-1B Petition, USCIS relied on two evidentiary conclusions: (1) the record did not "sufficiently identify or describe the actual special and/or advanced knowledge possessed by [Ahmet U.];" and, (2) the record did not show "how [Ahmet U.'s] experience or duties with the foreign entity enable[d] him to acquire knowledge that is special and/or advanced." (R. 386–87.) Specifically, USCIS found that the record "does not accurately describe how the knowledge is gained or demonstrate how [Ahmet U.'s] knowledge is more advanced or special" in comparison to others holding comparable positions in the industry. (R. 387.) USCIS was unpersuaded that the unique and complex machinery Ahmet U. worked with changed that analysis. In considering whether substantial evidence exists, the Court is mindful of its role in analyzing the record only for "relevant evidence as a reasonable mind might accept as adequate to support" USCIS's findings. *Consolo*, 383 U.S. at 620. The Court must refrain from "reweigh[ing] the evidence [to]determine which of the competing views is more compelling." *Gonahasa*, 181 F.3d at 542. The Court proceeds under this standard to determine the matter at bar.

     **a.**    **As It Is Defined, Substantial Evidence Exists to Support USCIS's Finding That G.D USA Did Not Sufficiently Identify the "Specialized Knowledge"**

The Court finds substantial evidence exists to support USCIS's finding because a reasonable mind could conclude that G.D USA did not submit evidence that sufficiently detailed any specialized knowledge.

While it denied G.D USA's initial application, in its RFE, USCIS provided G.D USA the opportunity to supplement the record in the specific areas that USCIS had concerns:

- Evidence of [Ahmet U.'s] prior education, training, and employment and an explanation how [sic] that relates to the claimed specialized knowledge.
- A description of [Ahmet U.'s] knowledge or expertise and why it is specialized. Please identify [Ahmet U.'s] knowledge as either "special" and/or "advanced."
- A comparison of the beneficiary's knowledge to that of other employees and workers in the same field.

(R. 6.)

Nevertheless, despite G.D USA's additional materials, USCIS found that the record did not "sufficiently identify or describe the actual special and/or advanced knowledge possessed by [Ahmet U.]." (R. 386.) In the August 2019 Denial, USCIS stated that "it is not enough to simply state that the beneficiary works with proprietary machines." (R. 385.) Instead, USCIS made clear that "[t]he record should be able to demonstrate, with supporting evidence, that the beneficiary's knowledge is special or advanced." (R. 385.) As to Ahmet U.'s duties with G.D Turkey, USCIS found that "the duties themselves are broad and appear to be duties that are common to most repair or service technicians." (R. 386.) G.D USA argues that the Sample Diary and Liggett Letter show that Senior Assembly Technicians "perform the most complex builds, installations, and repairs on G.D machine[s]." (Mem. Supp. G.D USA Mot. Summ. J. 3, 11.) The Court assesses each in turn.

First, the Court finds that the Sample Diary does not pertain to Ahmet U.'s knowledge or experience in such a way that would render USCIS's finding unreasonable. The Sample Diary was not Ahmet U.'s. Instead, it covered one week of work by an unnamed Senior Assembly Technician. The Sample Diary does not reflect Ahmet U.'s individual experience nor does it identify how Ahmet U.'s knowledge specifically "is special or advanced." (R. 385.) Also, although the Sample Diary might reveal how a Senior Assembly Technician such as Ahmet U.

29

has gained more experience and knowledge than junior technicians, the Sample Diary does not explain how a Senior Assembly Technician's knowledge or experience surpasses that of other *highly trained* technicians in G.D USA or the industry.  *See Fogo de Chao (Holdings) v. U.S. Dep't of Homeland Sec.*, 211 F. Supp. 3d 31, 39 (D.D.C. 2016) (holding that reports by industry experts that described how beneficiary retained knowledge and experience unparalleled in the culinary industry showed "specialized knowledge").

Second, the Liggett Letter similarly fails to demonstrate how Ahmet U. gained specialized knowledge during or before his employment with G.D Turkey.  G.D USA argues that the Liggett Letter presents "a direct comparison between a specialized-knowledge technician like [Ahmet U.] and the general-knowledge technicians Liggett employed on site."  (R. 504.) Notably, G.D USA admits that while the Liggett Letter might support the expertise of a technician "*like Mr. [Ahmet U.]*" the Liggett Letter does not specifically address Ahmet U.'s relevant specialized knowledge or expertise.  (R. 504 (emphasis added).)  A comparison between junior-level technicians and the Senior Assembly Technicians that have serviced Liggett in the past also does not show how Ahmet U. specifically maintains knowledge or experience "distinct or uncommon in comparison to that generally found in the particular industry."  (R. 6.)  Lastly, although the Liggett Letter shows the role of a Senior Assembly Technician, it does not specify how such a technician, specifically Ahmet U., maintains specialized knowledge.

Despite G.D USA's arguments to the contrary, the Sample Diary and Liggett Letter do not speak to Ahmet U.'s unique training or experience, but instead present general information about the Senior Assembly Technician role.[16]  In the instant matter, USCIS weighed the

---

[16] The instant record does not rise to the level of other cases in which courts have found that USCIS did not weigh countervailing evidence.  For example, the United States District Court for the District of Columbia found that USCIS erred when it relied only on written training manuals and failed to consider a letter from a restaurant-industry consultant that reported hands-

evidence in the record and found that G.D USA did not submit evidence to show how Ahmet U. had developed unique knowledge in comparison to others holding similar positions in G.D USA or the industry.  Therefore, the Court may not "reweigh the evidence" already considered by USCIS.  *Gonahasa*, 181 F.3d at 542.  Because USCIS weighed the evidence and no evidence exists to make such a finding unreasonable, the Court finds substantial evidence exists in the record to support USCIS's finding that G.D USA did not show "how [Ahmet U.'s] experience or duties with the foreign entity enable[d] him to acquire knowledge that is special and/or advanced." (R. 387.)

Even were the Court to see a possible competing view—which some evidence might support—it cannot reweigh evidence to determine which view is more compelling.  *Perez*, 914 F.3d at 856.  Even a decision of "less than ideal clarity" can meet the substantial evidence test where, as here, the "agency's path may reasonably be discerned."  *Wheeler*, 918 F.3d at 334.

---

on training comprised "nearly 100% of the total training effort, and is dependent on experienced, veteran Brazilian churrasqueiro chefs to pass on their trade to others."  *Fogo de Chao*, 211 F. Supp. 3d at 40 (internal quotations marks omitted); *see also InspectionXpert Corp. v. Cuccinelli*, No. 1:19cv65, 2020 WL 1062821 (M.D.N.C. Mar. 5, 2020) (finding that USCIS erred when it "entirely overlooked" an additional letter that directly contradicted USCIS's determination with "detailed explanation").

    In contrast, USCIS found that the record contradicted G.D USA's claims that Ahmet U. underwent "weeks-long intensive courses" because Ahmet U.'s Training List showed only "6 trainings for a Mechanical Technician."  (R. 387.)  Additionally, USCIS found that G.D USA's "need for [Ahmet U.] to train new employees to prevent a shortage of workers is not supported by [the record]."  (R. 8.)  G.D USA's description of the job duties allotted Ahmet U. only 20% of his duties to train junior technicians.  (R. 50.)

> **b.      As It Is Defined, Substantial Evidence Exists to Support USCIS's Finding That G.D USA Did Not Sufficiently Show How Ahmet U.'s "Specialized Knowledge" Differed in Comparison to Others Similarly Employed in the Company or Industry**

As defined under the law, the Court also finds that substantial evidence exists to support USCIS's finding that G.D USA did not submit evidence showing how Ahmet U.'s purported "specialized knowledge" differed in comparison to "other technicians within the same company, groups of companies, or industry."  (R. 385.)

G.D USA argues that USCIS erred in declining to find that Ahmet U. maintains "specialized knowledge" in comparison to those similarly employed when it failed to consider the relevant evidence discussed above.  (Mem. Supp. G.D USA Mot. Summ. J. 18.)  G.D USA further argues that USCIS focused too closely on "*where* the training occurred and not whether it occurred."  (*Id.* 20 (emphasis in original).)

In response to the Agency RFE, G.D USA presented that "to truly perform the senior-level duties of a Senior Assembly Technician requires extensive training specific to G.D machines."  (R. 474.)  In support of that training, G.D USA "attached certificates and [the July 2019 Fauci Letter,] confirming the four years of intensive, in-house, and experiential training [Ahmet U.] received from G.D machine experts."  (R. 474.)  G.D USA claimed that "[t]hese years of training are what provided [Ahmet U.] with specialized knowledge unique to the industry."  (R. 474.)

The July 2019 Fauci Letter also states that "to impart th[e] required specialized knowledge" for assembling G.D USA's machines, G.D USA's affiliates "put new hires through years of rigorous training and experience with G.D machines before [the hires] can autonomously support individual customers and specialized-knowledge employees."  (R. 493–

94.)  In fact, G.D USA states in its response to the Agency RFE, "[t]his hands-on training can only be accomplished at [G.D USA's affiliates'] Italian factory, which is our knowledge center where G.D machines are designed and developed."  (R. 494.)  Such training allegedly consisted of "in-house courses and one-on-one supervision at G.D facilities and in the field" and that Ahmet U.'s trainings were "weeks-long, intensive courses."  (R. 494)

Notwithstanding the location of these trainings, the record does not support a finding that Ahmet U. underwent specialized training different from others similarly employed in the company or industry during the four-year period prior to Ahmet U.'s time with G.D Turkey.  The list of trainings gives almost no description about the nature of each training besides brief descriptions such as "Basic Mechanical Training."  (R. 498.)  While G.D USA says that Ahmet U. underwent "weeks-long, intensive courses," (R. 494), no record exists to support what made up this training other than general details, such as the trainer and date of the training, (*see* R. 497–502).  The training descriptions, for instance, include only that the seminar covered general topics such as "clear understanding of the machines . . . [and] [t]o learn how to use machine catalogues and manuals . . . ."  (R. 499.)  While the Court sees that Ahmet U. received some trainings from 2005 to 2011, G.D USA does not specify what these trainings covered or how they made Ahmet U.'s knowledge more specialized than "other technicians within the same company, group of companies, or industry."  (R. 385.)  These certainly were not "[c]urricula and training manuals for internal training courses," nor were they "[p]ersonnel or in-house training records that establish[ed]" that Ahmet U.'s "claimed specialized knowledge normally can be gained only through prior experience or training with the petitioning organization."  (2015 Policy Memo 12–13.)

The present record differs from a case on which G.D USA grounds its argument: *InspectionXpert Corp. v. Cuccinelli*, 2020 WL 1062821 (M.D.N.C. Mar. 5, 2020).  In *InspectionXpert*, the court found that USCIS erred in denying a petition for a H-1B Specialty Occupation visa when it "entirely overlook[ed]" a third letter that provided a "detailed explanation" of the duties to be performed and explained the "correlation between that work and a need for a particular level education of highly specialized knowledge." *Id.* at *27–28.  Instead, USCIS relied on the second letter to find that the petitioner failed to show:  "(1) the actual work that the beneficiary would perform; (2) the complexity, uniqueness and/or specialization of the duties; or (3) the correlation between that work and a need for a particular level education of highly specialized knowledge in a specific specialty." *Id.* at *28.  The *InspectionXpert* Court found that USCIS failed to consider all of the relevant evidence because the third letter "[bore] directly on the determination" of whether the petitioner met its standard of proof. *Id.*  (finding that the third letter "[did] in fact elaborate upon" the issues on which USCIS rested its denial).

The evidence G.D USA argues that USCIS failed to consider does not bear directly on Ahmet U.'s specialized knowledge.  The Sample Diary and Liggett Letter discuss Senior Assembly Technicians generally and abstractly, not specifically in relation to Ahmet U.  The Sample Diary tracks a week's tasks of an unnamed Senior Assembly Technician.  In the same vein, the Liggett Letter discusses how Liggett depends on "G.D USA . . . for technical guidance and expertise," as well as G.D USA's technicians like Ahmet U. "to be placed on site for training purposes, machinery evaluations as well as machine repairs." (R. 504.)  The Liggett Letter, however, does not say that Ahmet U. ever assisted Liggett technicians or that Liggett has personal knowledge of or experience with Ahmet U.  Nor does the Liggett Letter provide that

Ahmet U. has knowledge or training distinguishable from that of G.D USA's experienced technicians or others in the industry.[17]

Here, USCIS weighed and explicitly discussed evidence submitted by G.D USA that pertained to the question of Ahmet U.'s knowledge and experience—such as the Fauci Certification and Ahmet U.'s Training List—and determined that the evidence did not support a finding of specialized knowledge. Unlike *InspectionXpert*, the evidence G.D USA argues that USCIS allegedly failed to consider does not make USCIS's August 2019 Denial unreasonable because they do not directly relate to Ahmet U.'s purported specialized knowledge. The Court may not "reweigh" the evidence in the record. *Gonahasa*, 181 F.3d at 542. Therefore, because a reasonable mind would find that the record did not show how Ahmet U.'s knowledge or expertise was "distinct or uncommon in comparison to the knowledge of other similarly

---

[17] The record also differs from *Fogo de Chao*, 769 F.3d 1127. In *Fogo de Chao*, the United States Court of Appeals for the District of Columbia Circuit found that the district court erred when it applied the arbitrary and capricious standard and upheld USCIS's finding that the petitioner failed to submit evidence on specialized knowledge. *Id.* at 1147. Instead, the D.C. Circuit held that the record demonstrated the beneficiary completed the trainings by a preponderance of the evidence through: (1) a sworn affidavit; (2) the beneficiary's *curriculum vitae* that *detailed the training*; and, (3) a letter from a specialist that concluded after reviewing the beneficiary's *curriculum vitae* and current position that the beneficiary "had the cultural background and . . . skills necessary to fill that position." *Id.*

In the instant matter, G.D USA suggests that the assertions from Country Manager Fauci, Ahmet U.'s CV, and the list of specific trainings mirror *Fogo de Chao* and should suffice. None of the exhibits provide the level of detail articulated in *Fogo de Chao* as to what the trainings specifically included. *See id.* Additionally, the *Fogo de Chao* Court showed particular concern because "at no time prior to reopening the administrative case had [USCIS] questioned the sufficiency of Fogo de Chao's proof . . . or requested further evidence [on training]." *Id.* Here, USCIS issued an extensive RFE that recommended submission of, among other things, "[c]urricula and training manuals for internal training courses" or "[p]ersonnel or in-house training records that establish that the beneficiary's claimed specialized knowledge can be gained only through prior experience or training with the petitioning organization." (R. 6–7.)

employed workers in the particular industry," (2015 Policy Memo 6), the Court finds substantial

evidence exists to support USCIS's findings as to the "specialized knowledge" requirement.[18]

Even were the Court to see a basis for a contrary conclusion grounded in G.D USA's

claim that the singular type of machines they sell requires specialized knowledge to service, the

Court could not find that competing view more compelling than that made by USCIS because

"the agency's path" here "may reasonably be discerned."  *Perez*, 914 F.3d at 856; *Wheeler*, 918

F.3d at 334.

### 3. USCIS Properly Considered the 2015 Policy Memo in the August 2019 Denial

USCIS provided a "reasoned explanation" for the purposes of this review in the August

2019 Denial because USCIS applied the 2015 Policy Memo's definition of "specialized

knowledge" and considered the 2015 Policy Memo's factors.  G.D USA argues that because

USCIS did not expressly articulate its finding under the factors listed in the 2015 Policy Memo,

the agency "abandoned the analytical framework required by [the 2015 Policy Memo] and

reached a conclusion belied by the preponderance of record evidence."  (Mem. Supp. G.D USA

Mot. Summ. J. 21.)

As previously explained, the 2015 Policy Memo sets forth a non-exhaustive list of factors

that USCIS "*may* consider when determining whether" a beneficiary employee's knowledge is

---

[18] G.D USA cites USCIS's Adjudicator Field Manual for the priority of primary to secondary evidence.  (*See* G.D USA Mem. Supp. Resp. Mot. Summ. J. 9–11, ECF No. 26; *see also* G.D USA Mem. Supp. Resp. Mot. Summ. J. "Adjudicator's Field Manual:  Chapter 11 Evidence" 11.1(f); ECF No. 26-1.)  The Court finds the matter of no issue.

When USCIS weighed the evidence in support of the L-1B Petition, it reviewed documents pertinent to the question of Ahmet U.'s specialized knowledge.  In doing so, USCIS found that Ahmet U.'s Training List did not show how Ahmet U. had gained specialized knowledge in comparison with others in G.D USA or the industry.  (*See* R. 385–87.)  Because the Court may not reweigh the evidence presented to USCIS, the Court must accept the weight given by USCIS to the relevant evidence.  *Gonahasa*, 181 F.3d at 542.

specialized.  (2015 Policy Memo 8; *see supra* Section III.B.1.)  To conclude that a beneficiary employee possesses "specialized knowledge," the evidence must establish that the beneficiary's "prior education, training, and employment qualifies him [or] her to perform the intended services in the United States."  (2015 Policy Memo 12 (quoting 8 CFR 214.2(l)(3)(iv).)  "[I]n all cases," the factual material must include a basis "to compare the beneficiary's knowledge to that of others."  (*Id.* 12.)  The 2015 Policy Memo notes the importance of submitting such evidence because "[m]erely stating that a beneficiary's knowledge is somehow different from others or greatly developed does not, in and of itself, establish that he or she possesses specialized knowledge."  (*Id.* 13.)  "Ultimately, it is the weight and type of evidence that establishes whether the beneficiary possesses specialized knowledge."  (*Id.*)

The Court "must undo" agency action "[w]here the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion."  *Cnty. of L.A. v. Shalala*, 192 F.2d 1005, 1021 (D.C. Cir. 1999) (finding that the agency failed to provide reasoned explanation when it indicated the record presented "*no evidence*" when in fact some evidence existed) (emphasis in original)).  An agency fails to provide a reasoned explanation when it abandons long-standing precedent without reasonable explanation for doing so.  *Jimenez-Cedillo v. Sessions*, 885 F.3d 292, 298 (4th Cir. 2018).

In the August 2019 Denial, USCIS provided a reasonable explanation because it applied the 2015 Policy Memo's definitions of "specialized" and "advanced" knowledge and non-exhaustive factors.  (*See* R. 385 (incorporating the Policy Memo, USCIS's regulatory framework, and the INA).)  For instance, the August 2019 Denial finds that G.D USA did not submit sufficient evidence "that the beneficiary's training is more advanced or special than the training provided to other technicians within the same company, group of companies, or

37

industry." (R. 385.) Therefore, the record lacked "a comparison to show that the beneficiary's knowledge is special or advanced." (R. 387.)

The August 2019 Denial also incorporated the 2015 Policy Memo factors. First, USCIS considered the 2015 Policy Memo's factors of whether the "beneficiary possesse[d] knowledge of foreign operating conditions that is of significant value to the petitioning organization's U.S. operations" and whether the "beneficiary has been employed abroad in a capacity involving assignments that have significantly enhanced the employer's productivity, competitiveness, image, or financial position" under the 2015 Policy Memo. (2015 Policy Memo 8.) The August 2019 Denial also considered G.D USA's argument that Ahmet U. provided significant value, noting G.D USA's contention that Ahmet U. "is not just any Mechanical Technician—he is a technical expert regarding highly-complicated, industry-leading, proprietary machinery." (R. 387.)

Second, USCIS considered the 2015 Policy Memo's factor of whether the "beneficiary's claimed specialized knowledge normally can be gained only through prior experience with the petitioning organization." (2015 Policy Memo 8.) The August 2019 Denial weighed G.D USA's account that "to truly perform the senior-level duties of a Senior Assembly technician requires extensive training specific to G.D machines." (R. 387.)

Third, USCIS weighed the 2015 Policy Memo's factor of whether the "beneficiary possesses knowledge of a product or process that cannot be easily transferred or taught to another individual without significant economic cost or inconvenience." (2015 Policy Memo 8.) The August 2019 Denial considered that "given how thinly stretched the organization's operations are, they do not have the luxury of hiring someone, sending them off to Italy for four years of the same training, and waiting for them." (R. 387.)

In reaching its finding, USCIS ultimately relies on "the weight and type of evidence [to] establish[] whether the beneficiary possesses specialized knowledge." (2015 Policy Memo 13.) The 2015 Policy Memo requires, in all cases, evidence "to compare the beneficiary's knowledge to that of others" and warns that "[m]erely stating that a beneficiary's knowledge is somehow different from others or greatly developed does not, in and of itself, establish that he or she possesses specialized knowledge." (2015 Policy Memo 12.) USCIS, upon reviewing the L-1B Petition, found that "[t]he record does not contain a comparison of skills, experience, or knowledge within the organization or industry" in direct violation of the Policy Memo's requirements. (R. 387; *see also* 2015 Policy Memo 12–13.) The Court's task "is not to reweigh the evidence and determine which of the competing views is more compelling." *Gonahasa*, 181 F.3d at 542. Even if the Court could draw an "inconsistent conclusion" from the present record, the Court may not "substitute its views for that of the [a]gency" because the "agency's path" here "may reasonably be discerned." *Consolo*, 383 U.S. at 620; *Perez*, 914 F.3d at 856; *Wheeler*, 918 F.3d at 334. The Court must simply "ensure that substantial evidence supports the [agency's] judgment." *Id.* Because USCIS weighed the evidence, applied the 2015 Policy Memo, and did not contradict long-standing agency precedent, Court finds that USCIS provided a "reasoned explanation" in the August 2019 Denial.[19]

---

[19] Also, USCIS did not apply a heightened standard of proof beyond a preponderance of the evidence. Courts generally find that an administrative record "belies the agency's conclusion," *Shalala*, 192 F.2d at 1021, when the agency requires additional evidence to prove facts already established in the record via the applicable standard. *Lu-Ann Bakery Shop, Inc. v. Nelson*, 705 F. Supp. 7, 9 (D.D.C. 1988). The 2015 Policy Memo provides the appropriate standard of review, that the petitioner bears the burden of establishing the L-1B elements by a preponderance of the evidence. (2015 Policy Memo 5.)

G.D USA argues that in denying its L-1B Petition, USCIS applied a heightened standard of proof beyond a showing by a preponderance of the evidence. (Mem. Supp. G.D USA Mot. Summ. J. 18.) The Court has found that substantial evidence existed to show that G.D USA did not establish Ahmet U.'s specialized knowledge in the record. USCIS also specifically identified that the applicable standard was preponderance of the evidence. (R. 386.) ("the petitioner is only

## IV.  Conclusion

For the foregoing reasons, the Court grants the USCIS Motion for Summary Judgment, (ECF No. 18), and denies the G.D USA Motion for Summary Judgment, (ECF No. 23).  An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 3|31|2021
Richmond, Virginia

---

required to meet the preponderance of the evidence burden of proof.").  As such, the Court finds that USCIS did not require additional evidence to prove facts already established in the record. *See Lu-Ann Bakery Shop, Inc. v. Nelson*, 705 F. Supp. 7, 9 (D.D.C. 1988).  Because USCIS weighed the evidence and no evidence exists in the record to contradict its finding, the Court finds that the agency provided a "reasonable explanation" for its denial of the L-1B Petition. *See id.*